Alison B. Wilson
awilson@cftc.gov
DC Bar #475992
Division of Enforcement
1155 21st Street, N.W.
Washington, DC 20581
Telephone: 202-418-5568
Facsimile: 202-418-5523
Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| DAREN L. PALMER and TRIGON Group, INC., | ) CIVIL ACTION NO.: ) ) |
| Defendant. | ) COMPLAINT FOR INJUNCTIVE AND ) OTHER EEQUITABLE RELIEF AND FOR ) CIVIL PENALTIES UNDER THE ) COMMODITY EXCHANGE ACT, AS ) AMENDED, 7 U.S.C. §§1-25 |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

### I. SUMMARY

1.  From at least September 2000 through the present ("relevant period"), Defendants Daren L. Palmer ("Palmer") and Trigon Group, Inc. ("Trigon"), fraudulently solicited and accepted at least $40 million from at least 57 individuals and entities to participate in a

commodity pool and/or purported hedge fund to trade commodity futures contracts, including S&P 500 index futures, and options on commodity futures contracts.

2. Throughout the relevant period, in order to induce participation in the commodity pool, Palmer, acting as an unregistered commodity pool operator ("CPO") and President of Trigon, omitted material facts, including that Palmer was misappropriating client funds; and made material misrepresentations, including misrepresenting that the commodity pool had a highly profitable track record trading commodity futures since its inception in 2000; and falsely representing, and grossly inflating, the total amount of funds under management and traded in the commodity pool.

3. Instead of trading pool participant funds as promised, by his own admission, Palmer used pool participant funds to pay principal and purported profitable returns to existing pool participants in a manner typical of a Ponzi scheme and to pay business expenses. By his own admission, Palmer misappropriated pool participant funds for his personal use, paying himself as much as $35,000 per month and using pool funds for the construction of a new home, payment of personal credit card bills, and purchase of snowmobiles.

4. To conceal his trading losses, Ponzi scheme and misappropriation, Palmer issued or caused to be issued false monthly statements and other reports. These reports falsely reflected both highly profitable returns from trading commodity futures on behalf of the pool and that the pool was increasing in value and assets, eventually totaling more than $65 million.

5. Contrary to his representations, Palmer traded only a small portion of pool participant funds in commodity futures trading accounts for the pool. Despite taking in at least $40 million in pool participant funds since 2000, including $20 million since January 2007,

Palmer and Trigon only placed approximately $4.5 million into commodity futures trading accounts in the name of Trigon during the period from January 2004 to the present.

6. In 2009, Palmer admitted to Idaho state authorities that he had used the pool participant funds for personal and business expenses, to repay pool participants, and to pay himself undisclosed fees that were not based on the returns of the pool.  In addition, Palmer made misleading statements to customers by claiming profitable returns and grossly inflating the amount of funds that were placed into commodity futures accounts.

7. Through his ongoing conduct, Palmer has engaged, is engaged, or is about to engage in acts and practices in violation of the anti-fraud provisions of Sections 4b(a)(2) and 4o(1) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6(b)(a)(2) and 6o(1) (2006), and Section 4b(a)(1) of the Act as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act ("CRA")), § 13102, 122 Stat. 1651 (effective June 18, 2008), to be codified at 7 U.S.C. § 6(b)(a)(1).  Palmer also acted as a CPO of the commodity pool without being registered as such in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

8. At all times relevant and in regard to all conduct alleged herein, Palmer was an agent of Trigon and acted within the scope of his employment.  As such, Trigon is liable for Palmer's conduct pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

9. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act.  In addition, the Commission seeks civil monetary penalties and other equitable relief, including restitution to pool participants, disgorgement of Defendants' ill-

gotten gains, a permanent trading ban, and such other relief as the Court may deem necessary or appropriate.

10. Unless permanently restrained and enjoined by the Court, Defendants are likely to continue to engage in the illegal acts and practices alleged in this Complaint, as more fully described below.

## II.  JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

12. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

## III. PARTIES

13. **Plaintiff Commodity Futures Trading Commission** is a federal independent regulatory agency charged with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.* (2006), and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2008).

14. **Defendant Daren L. Palmer** is an individual who resides in Idaho Falls, Idaho. Palmer is the founder and President of Trigon and controls the day to day operations of the pool. Palmer has never been registered with the Commission as a CPO or in any other capacity.

15. **Defendant Trigon Group, Inc.** is incorporated in Nevada and operates out of Idaho Falls, Idaho. Trigon has never been registered with the Commission as a CPO or in any other capacity.

## IV. FACTS

### Formation of the Pool

16. Section 1a(5) of the Act, 7 U.S.C. § 1a(4) (2006), defines a "commodity pool operator" as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, has solicited, accepted or received funds, securities or property from others for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

17. Since at least September 2000, Defendants have fraudulently operated a commodity pool, misappropriated pool participant funds, and run a Ponzi scheme.

18. Palmer formed a corporation named Trigon in the state of Nevada with his father, Dean Palmer, in 1997. Palmer and his father organized this corporation for Palmer to facilitate his trading of stock index futures.

19. By his own admission, Palmer traded both futures and options on futures through his corporation Trigon.

20. Since at least January 2004, Palmer has controlled commodity futures trading accounts in the name of Trigon at Rosenthal Collins Group LLC ("Rosenthal Collins"), a Futures Commission Merchant ("FCM") registered with the CFTC. The accounts are introduced by Global Futures Exchange and Trading Co., an Introducing Broker ("IB") registered with the CFTC.

21. Starting in at least September 2000, Palmer began trading on behalf of investors who were either family members or close friends. At least 57 individuals and entities invested with Palmer.

22. From at least September 2000, Palmer represented to many investors that he would pool their funds and then trade their funds in commodity futures or options on commodity futures contracts.

23. Throughout the entire period when Palmer accepted money from investors for purposes of trading in the commodity pool, Palmer did not register in any capacity with the National Futures Association ("NFA") or the Commission.

**Palmer's Fraudulent Solicitations**

24. From September 2000 to the present, Palmer directly and indirectly solicited at least $40 million from at least 57 individuals or entities to invest in the commodity pool. Just since January 2007, Palmer solicited at least $20 million from prospective and existing participants to invest in the commodity pool.

25. Pool participants understood that their funds would be used for trading commodity futures and their guaranteed returns were based on the profitability of the Defendants' trading.

26. In soliciting prospective and existing pool participants, Palmer represents that he will use pool participant funds to trade commodity futures on their behalf, among other things, S&P 500 index futures contracts. The S&P 500 index futures contract trades on the Chicago Mercantile Exchange, a designated commodity futures contract market regulated by the CFTC.

27. Defendants required some of the pool participants to invest in the commodity pool by providing tens or hundreds of thousands or even millions of dollars to Trigon in exchange for

promissory notes, some of which guaranteed an annual return of 7% or more. The promissory notes were signed by Palmer as President of Trigon.

28. Although many of the promissory notes themselves did not offer a guaranteed return, Palmer verbally guaranteed some investors as much as a 20% per annum rate of return.

29. Other pool participants who provided funds to Palmer were promised a monthly return of 7%.

30. At a minimum, Palmer makes the following false or misleading representations, and omits the following material facts in his solicitations:

    a. Palmer failed to disclose the fact that he is using investor funds for his own personal use, including paying himself as much as $35,000 per month and using pool funds for the construction of a new home, paying personal credit card bills, and buying snowmobiles;

    b. Palmer made the false representation that the pool is consistently profitable;

    c. Palmer made the false representation that that the pool achieves positive returns of as much as 7% monthly and 20% annually; and

    d. Palmer made the false representation that, over time, the pool has increased in value to more than $65 million.

31. Contrary to his claims of consistent successful trading, highly profitable returns, and ever increasing funds under management, Palmer was misappropriating the vast majority of the funds invested by pool participants.

32. Despite taking in at least $40 million in participant funds since September 2000, including $20 million in participant funds since January 2007, Palmer only placed $4.5 million

in the Trigon accounts at Rosenthal Collins and one other FCM between January 2004 and the present.

33.     Palmer did not disclose to his investors that neither he nor Trigon was registered with the NFA or Commission in any capacity.

**Palmer's Misappropriation**

34.     Palmer did not take a set commission, but told some prospective participants that he intended to keep for himself any profit over the 18% to 20% range.  Contrary to the claim that Palmer would be compensated only after pool participants earned a certain rate of return, at times during the course of Trigon's operation, Palmer compensated himself with flat monthly fees ranging between $25,000 and $35,000 per month, regardless of the profitability of Trigon's futures trading.  Thus, instead of trading pool participant funds as promised, by his own admission, Palmer used pool participant funds for personal expenses, including, among other things, construction of a new home, paying off his personal credit card bill, and purchasing snowmobiles.

35.     Instead of trading pool participant funds as promised, Palmer - by his own admission - used pool participant funds to pay principal and purported profitable returns to existing pool participants in a manner typical of a Ponzi scheme.  For example, from January 2008 to July 2008, Palmer used approximately $12 million in pool funds to pay existing pool participants.  Similarly, from the inception of the pool, Palmer paid monthly interest or dividends to participants of as much as 7% per month.  On January 27, 2009, Palmer admitted in sworn testimony to the Idaho Attorney General's Office that he used pool participant funds to pay other participants and for personal and business expenses.

**Palmer's Issuance of False Account Statements**

36. From the inception of the pool, Palmer issued monthly account statements to some participants. Those false statements indicated that the participants' investments were growing as much as 7% per month and that the pool was increasing in value and assets, eventually totaling more than $65 million.

37. Existing pool participants decided to increase their participation on the basis of the allegedly consistently profitable returns.

## V. VIOLATIONS OF THE ACT

### COUNT ONE

### Fraud in Connection with Futures Contracts

**(Violations of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2006), and Section 4b(a)(1) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1))**

38. Paragraphs 1 through 37 are realleged and incorporated herein.

39. Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006), make it unlawful for any person to cheat or defraud or attempt to cheat or defraud; or willfully make or cause to be made to other persons false reports or statements, or willfully enter or cause to be entered for other persons false records; or willfully deceive or attempt to deceive by any means whatsoever other persons in or in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, for or on behalf of such other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the produce or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof.

40. Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

41. As alleged above, during the relevant period, Palmer knowingly, willfully or with reckless disregard for the truth, violated Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006), with respect to acts occurring before June 18, 2008, and in violation of Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), with respect to acts occurring on or after June 18, 2008, the effective date of the CRA by, among other things, (1) omitting material information, including the fact that he was misappropriating pool participant funds; (2) falsely representing that he was generating profits from his trading on behalf of the pool and pool participants; (3) issuing or causing to be issued false account statements and reports reflecting positive returns for the pool and increases in the value of individual pool participants' interests; (4) misappropriating pool participant funds by using such funds to pay principal and purported returns to other pool participants; and (5) misappropriating pool participant funds to pay business expenses and for personal use.

42.     Palmer was acting as an agent of Trigon when he violated the Act and, therefore, Trigon, as Palmer's principal, is liable for Palmer's violations of Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006), with respect to acts occurring before June 18, 2008, and for Palmer's violations of Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), with respect to acts occurring on or after June 18, 2008, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

43.     Each misrepresentation or omission of material fact, issuance of a false statement or report, and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006), with respect to acts occurring before June 18, 2008, and Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), with respect to acts occurring on or after June 18, 2008.

## COUNT TWO

### Fraud By Commodity Pool Operator

**(Violations of Section 4o(1)(A) & (B) of the Act, 7 U.S.C. § 6o(1)(A) & (B) (2006))**

44.     Paragraphs 1 through 43 are realleged and incorporated herein.

45.     Commencing in at least September 2000 and continuing through the present, Palmer acted as a CPO for the pool by soliciting, accepting or receiving funds from others and engaging in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodities for future delivery on or subject to the rules of a contract market.

46.     As alleged above, during the relevant period, Palmer employed a device, scheme or artifice to defraud prospective and existing pool participants, or engaged in a transaction,

practice or course of business that operated as a fraud or deceit upon prospective and existing pool participants in violation of Sections 4o(1)(A) & (B) of the Act, 7 U.S.C. §§ 6o(1)(A) & (B) (2006), by (1) omitting material information, including the fact that he was misappropriating pool participant funds; (2) falsely representing that he was generating profits from his trading on behalf of the pool and pool participants; (3) issuing or causing to be issued false account statements and reports reflecting positive returns for the pool and increases in the value of individual pool participants' interests; (4) misappropriating pool participant funds by using such funds to pay principal and purported returns to other pool participants; and (5) misappropriating pool participant funds to pay business expenses and for personal use.

47. Palmer was acting as an agent of Trigon when he violated the Act and, therefore, Trigon, as Palmer's principal, is liable for Palmer's violations of Sections 4o(1)(A) & (B) of the Act, 7 U.S.C. §§ 6o(1)(A) & (B) (2006), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

48. Each misrepresentation or omission of material fact, issuance of a false statement or report, and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4o(1)(A) & (B) of the Act, 7 U.S.C. §§ 6o(1)(A) & (B) (2006).

## COUNT THREE

### Failure to Register As a Commodity Pool Operator

**(Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1))**

49. Paragraphs 1 through 48 are realleged and incorporated herein.

50.	Section 4m(1) of the Act, 7 U.S.C § 6m(1) (2006), provides that it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as a CPO.

51.	As alleged, during the relevant period, Palmer acted as a CPO within the meaning of Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2006), and has used the mails or instrumentalities of interstate commerce in or in connection with a commodity pool as a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

52.	Palmer was acting as an agent of Trigon when he violated the Act and, therefore, Trigon, as Palmer's principal, is liable for Palmer's violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

## VI. RELIEF

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers, enter:

(a)	an order finding that Defendants violated: Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006); Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C); and Sections 4o(1)(A) & (B) and 4m(1) of the Act, 7 U.S.C. §§ 6o(1)(A) & (B) and 6m(1) (2006);

(b)	an order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, including any successor thereof, from engaging in conduct violative of the sections of the Act that the Defendants have been alleged to have violated;

(c)	an order of permanent injunction prohibiting Defendants from engaging, directly or indirectly, in any activity related to trading in any commodity, as that term is defined in

Section 1a(4) of the Act, 7 U.S.C. § 1a(4) (2006) ("commodity interest"), including but not limited to, the following:

    1.    trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

    2.    engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

    3.    soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest;

    4.    entering into any commodity interest transactions for his own personal account, for any account in which he has a direct or indirect interest and/or having any commodity interests traded on his behalf; and

    5.    engaging in any business activities related to commodity interest trading.

(d)    an order of permanent injunction from applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2008), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2008);

(e)    an order directing Defendants, as well as any other person or entity associated with them, including any successor thereof, to disgorge, pursuant to such procedure as the Court

may order, all benefits received from the acts or practices which constitute violations of the Act, as described herein, and interest thereof from the date of such violations;

(f) an order directing Defendants, as well as any other person or entity associated with them, including any successor thereof, to make full restitution, pursuant to such procedure as the Court may order, to every pool participant whose funds were received by them as a result of acts and practices which constitute violations of the Act, as described herein, and interest thereon from the date of such violations;

(g) an order requiring Defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of (1) triple the monetary gain to Defendants for each violation of the Act or (2) $110,000 for each violation of the Act on or before October 22, 2000, $120,000 for each violation of the Act on October 23, 2000 through October 22, 2004, $130,000 for each violation of the Act on October 23, 2004 through October 22, 2008, and $140,000 for each violation of the Act on or after October 23, 2008; and

      (h)      an order for such other and further remedial ancillary relief as the Court may deem appropriate.

      February 26, 2009

      Respectfully submitted,

      PLAINTIFF UNITED STATES COMMODITY FUTURES TRADING COMMISSION

      By:  *S/Alison B. Wilson*

Alison Wilson
Trial Attorney
*awilson@cftc.gov*
John W. Dunfee
Chief Trial Attorney
*jdunfee@cftc.gov*
Paul Hayeck
Associate Director
*phayeck@cftc.gov*

Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
Phone (202) 418-5000
Facsimile (202) 418-5523