# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAREN L. PALMER and TRIGON Group, INC.,<br><br>Defendants. | CIVIL ACTION NO.:  CV-09-76-E- EJL<br><br>**ORDER GRANTING SUMMARY JUDGMENT AND ENTERING FINAL JUDGEMENT OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST DAREN L. PALMER** |

# ORDER

On February 26, 2009, the United States Commodity Futures Trading Commission ("Commission") filed the Complaint in this civil action against Defendants Daren L. Palmer ("Palmer") and Trigon Group, Inc. ("Trigon") seeking injunctive and other legal and equitable relief for violations of the antifraud provisions of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq.* The Commission moved this Court to grant summary judgment against Defendant Palmer and order permanent injunctive relief and disgorgement, and impose a civil monetary penalty.

Defendants have not filed a response to the motion for summary judgment. Pursuant to <u>United States v. Real Property Located at Incline Village</u>, 47 F.3d 1511, 1520 (9th Cir. 1995) default summary judgment is proper unless movant's paper are insufficient to support the motion or on their face the movant's papers reveal a genuine issue of material fact. <u>See</u> also <u>Marshall v. Gates</u>, 44 F.3d 722, 725 (9th Cir. 1995) (summary judgment may not be granted simply because opposing party violated a local rule, if movant did not meet burden of demonstrating absence of genuine issue for trial). Therefore, the Court evaluated the motion for summary judgment on the merits and determined, pursuant to F.R. Civ. P. 56, Plaintiff was entitled to summary judgment on all counts.

Based upon the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby:

ORDERED that the Commission's Motion for Summary Judgment against Defendant Palmer (Docket No. 58) is GRANTED and Summary Judgment and Order of Permanent Injunction, Disgorgement, and Civil Monetary Penalty as to Defendant Palmer is hereby entered and the Court enters the following findings of fact and conclusions of law finding Defendant Palmer liable as to all claims against him in the Complaint. Accordingly, the Court now issues the following Summary Judgment and Order of Permanent Injunction, Disgorgement, and Civil Monetary Penalty as to Defendant Palmer.

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court, therefore,

further directs the entry of the following Findings of Fact and Conclusions of Law, and Order of Permanent Injunction and Civil Monetary Penalty, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), as set forth herein.

## I.

## **FINDINGS OF FACT**

### A. **JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

2. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

### B. **THE DEFENDANTS**

3. **Defendant Daren L. Palmer** is an individual who resides in Idaho Falls, Idaho. Palmer attended Ricks College in Rexburg, Idaho, for two years, received a Finance degree from the University of Utah in 1995, and then worked as a financial representative at American General, a finance company. Palmer was the founder and President of Trigon Group, Inc. Palmer has never been registered with the Commission as a Commodity Pool Operator ("CPO") or in any other capacity.

4.      **Defendant Trigon Group, Inc. ("Trigon")** is a Nevada corporation operating out of Idaho Falls, Idaho.  Trigon, through Palmer, was held out to be an investment business that traded in both futures and options on futures for clients, generating high annual returns of approximately 20-25% per year.  Trigon has never been registered with the Commission as a CPO or in any other capacity.

C.     BACKGROUND

5.      Palmer formed a corporation named Trigon in the state of Nevada with his father, Dean Palmer, in 1997.  Palmer and his father organized this corporation for Palmer to facilitate his trading of stock index futures.   By his own admission, Palmer traded both futures and options on futures through his corporation, Trigon.  Since at least September 2000, Palmer, through Trigon, has solicited, accepted, or received funds for participation in a commodity pool from at least 55 pool participants in transactions amounting to over $68 million.

6.      Palmer used a number of commodity futures trading accounts to trade pool funds.  Since at least January 2004, Palmer controlled commodity futures trading accounts in the name of Trigon at Rosenthal Collins Group LLC ("Rosenthal Collins"), a Futures Commission Merchant ("FCM") registered with the CFTC.  The accounts are introduced by Global Futures Exchange and Trading Co., an Introducing Broker ("IB") registered with the CFTC.  Between August 1998 and June 2002, Trigon held an account at MF Global, an FCM registered with the CFTC.  The accounts are introduced by PTI, an IB registered with the CFTC.  The MF Global Trigon account was funded with $65,000.  Between December 2001 and May 2001, Palmer opened two commodity

trading accounts at Refco, an FCM registered with the CFTC, titled Trigon. The accounts were introduced to Refco by Global. On or about September 2003, Palmer opened a commodity trading account in the name of Trigon at National Commodities Corporation Inc. ("NCCI"), an FCM registered with the CFTC. The account was introduced by Whitworth and Sullivan, an IB registered with the CFTC.

### D.      PALMER'S MISREPRESENTATIONS

7.      Palmer told pool participants that their funds would be combined and used for trading commodity futures and their guaranteed returns were based on the profitability of the Defendant's trading. Palmer verbally guaranteed some pool participants as much as a 20% per annum rate of return. In fact, Palmer told some pool participants that he had been generating annual returns of 20 percent or greater for more than 12 years.

8.      Palmer told pool participants that he would retain a portion of the generated profits, when in fact Palmer paid his personal credit card bills and salary with flat monthly fees ranging between $25,000 and $35,000 per month (over $5.8 million total), regardless of the profitability of Trigon's futures trading. Palmer also used pool funds for the construction of a new home (over $9 million).

9.      Although Palmer led pool participants to believe that all money given to Palmer and Trigon would be invested through Trigon, Palmer used over $360,000 of pool participant money to charter private planes and more than $980,000 for business expenses. Additionally, Palmer gave over $2.7 million of pool participant money to close family members.

10. Through manufactured account statements sent to pool participants, Palmer made the false representation that, over time, the pool and customer accounts were increasing in value to a total of almost $60 million by June 2008, when Palmer's trading accounts in fact contained approximately $1 million.

11. Despite taking in at least $68 million in participant funds since September 2000, Palmer only placed $4.5 million in the Trigon accounts at Rosenthal Collins and one other FCM between January 2004 and the present. Of all of the money given to Palmer by pool participants, approximately $6.8 million total was deposited into trading accounts, approximately 10% of the total amount received from pool participants.

12. Although Palmer did earn money in some of his trading accounts, commissions and fees paid to those who assisted Palmer in trading coupled with the costs of the trading services exceeded any profits actually earned from trading.

13. Palmer told pool participants that he was licensed to sell securities when in fact he was never registered or licensed to do so. Palmer did not disclose to pool participants that neither he nor Trigon was registered with the National Futures Association or the CFTC in any capacity.

14. Palmer acknowledged most of the investment monies he received with a Promissory Note that he signed either as an individual or as the President of Trigon.

15. The Notes generally stated that Palmer owed the investor principal plus interest of 20 to 25 percent annually. In some instances, the notes stated that the investor would be paid with interest "at the rate per performance from Trigon."

16. If Palmer did not issue a Note, he verbally promised payment of 20 percent returns or greater per year.

### E. THE END OF PALMER'S SCHEME

17. On December 15, 2008, Palmer told a group of pool participants that he had lost virtually all of the pool participants' funds due to the downturn in the market.

18. In or around January 2009, Palmer admitted to pool participants that he had lost or expended all funds and had been running a Ponzi scheme for many years.

19. Although Palmer provided some pool participants with statements showing trading profits, and made payments to pool participants, the payments were actually made from the principal investments of later pool participants.

20. Palmer gave the last $500,000 of pool participant funds to several individuals who purported to be lenders and/or investors from Dubai. The Dubai-based lenders and/or investors scammed Palmer in what appears to be an advance fee scam.

21. Pool participants gave Palmer over $68 million, more than $49 million of which was used to pay phony returns to other pool participants.

22. Palmer admitted to owing pool participants $35-45 million, but claims the participant funds are completely lost.

### F. DEPOSITION OF PALMER

23. The Commission deposed Palmer on April 15, 2009, in accordance with the Federal Rules of Civil Procedure, during which time he asserted his Fifth Amendment privilege against self-incrimination to all questions of material significance.

## II.

## CONCLUSIONS OF LAW

### A. FRAUD IN CONNECTION WITH FUTURES CONTRACTS

**(Violations of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2006), and Section 4b(a)(1) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1))**

1.  Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006), make it unlawful for any person to cheat or defraud or attempt to cheat or defraud; or willfully make or cause to be made to other persons false reports or statements, or willfully enter or cause to be entered for other persons false records; or willfully deceive or attempt to deceive by any means whatsoever other persons in or in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, for or on behalf of such other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the produce or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof.

2.  Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or

defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

3. During the relevant period, Palmer knowingly, willfully or with reckless disregard for the truth, violated Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006), with respect to acts occurring before June 18, 2008, and in violation of Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), with respect to acts occurring on or after June 18, 2008, the effective date of the CRA by, among other things, (1) omitting material information, including the fact that he was misappropriating pool participant funds; (2) falsely representing that he was generating profits from his trading on behalf of the pool and pool participants; (3) issuing or causing to be issued false account statements and reports reflecting positive returns for the pool and increases in the value of individual pool participants' interests; (4) misappropriating pool participant funds by using such funds to pay principal and purported returns to other pool participants; and (5) misappropriating pool participant funds to pay business expenses and for personal use.

**A. Fraud By Commodity Pool Operator**

**(Violations of Section 4o(1)(A) & (B) of the Act, 7 U.S.C. § 6o(1)(A) & (B) (2006))**

1.      Commencing in at least September 2000 and continuing through the present, Palmer acted as a CPO for the pool by soliciting, accepting or receiving funds from others and engaging in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodities for future delivery on or subject to the rules of a contract market.

2.      During the relevant period, Palmer employed a device, scheme or artifice to defraud prospective and existing pool participants, or engaged in a transaction, practice or course of business that operated as a fraud or deceit upon prospective and existing pool participants in violation of Sections 4o(1)(A) & (B) of the Act, 7 U.S.C. §§ 6o(1)(A) & (B) (2006), by (1) omitting material information, including the fact that he was misappropriating pool participant funds; (2) falsely representing that he was generating profits from his trading on behalf of the pool and pool participants; (3) issuing or causing to be issued false account statements and reports reflecting positive returns for the pool and increases in the value of individual pool participants' interests; (4) misappropriating pool participant funds by using such funds to pay principal and purported returns to other pool participants; and (5) misappropriating pool participant funds to pay business expenses and for personal use.

**A. Failure to Register As a Commodity Pool Operator**

**(Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1))**

1.      Section 4m(1) of the Act, 7 U.S.C § 6m(1) (2006), provides that it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any

means or instrumentality of interstate commerce in connection with his business as a CPO.

2. During the relevant period, Palmer acted as a CPO within the meaning of Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2006), and has used the mails or instrumentalities of interstate commerce in or in connection with a commodity pool as a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

### III.

### ORDER OF PERMANENT INJUNCTION AND ANCILLARY RELIEF

IT IS HEREBY ORDERED THAT:

1. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), Palmer is permanently restrained, enjoined, and prohibited, directly or indirectly, from engaging in the following activities:

> A. Trading on or subject to the rules of any registered entity, as that term is defined in 7 U.S.C. § 1a(29);
>
> B. Directly or indirectly engaging in misappropriation, misrepresentations, and/or omissions in violation of Sections 4b(a)(2)(i)-(iii), 4b(a)(1)(A)-(C), or 4o(1)(A) and (B) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6o(1)(A) and (B);
>
> C. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));
>
> D. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Commission Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for

    his own personal account or for any account in which he has a direct or indirect interest;

E.  Having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on his behalf;

F.  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

G.  Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

H.  Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

I.  Acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);.

    2.    The injunctive provisions of this Order shall be binding upon defendant Palmer, upon any person who acts in the capacity of an agent, employee, representative, and/or assign of defendant Palmer and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with defendant Palmer.

### IV.

**ORDER OF DISGORGEMENT AND CIVIL MONETARY PENALTY**

**IT IS FURTHER ORDERED THAT:**

A.    **DISGORGEMENT**

1.     Palmer shall pay disgorgement totaling $20,619,981.98, plus pre and post-judgment interest to all commodity pool participants who invested money, either directly or indirectly, in Trigon.

2.     Pre-judgment interest shall be determined by using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 6621(a)(2) and shall accrue through the date of this Order.

4.     Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

5.     Palmer shall satisfy this disgorgement obligation under this Order by making payments to the National Futures Association ("NFA") as the Monitor ("Monitor").  The Monitor shall collect restitution payments from Palmer and make distributions as set forth below.  Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, the Monitor shall not be liable for any action or inaction arising from its appointment as Monitor, other than actions involving fraud.

6.     Palmer shall make disgorgement payments to the Monitor in the name "Trigon–Disgorgement Fund" and shall send such disgorgement payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to Office of Administration, National Futures Association, 200 W. Madison Street #1600, Chicago, Illinois 60606-3447 under cover letter that identifies

Palmer and Trigon and the name and docket number of the proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to: (a) the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581; and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

7. The Monitor shall oversee Palmer's disgorgement obligation and shall have discretion to determine the manner for distribution of funds in an equitable fashion to the pool claimants whose claims are or have been allowed in the claims process, or may defer distribution until such time as it deems appropriate. In the event that the amount of disgorgement payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative costs of the making a restitution distribution is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission.

8. To the extent that any funds accrue to the U.S. Treasury as a result of the disgorgement obligation in this Order, such funds shall be transferred to the Monitor for disbursement to pool claimants in accordance with the procedures set forth in the preceding paragraph.

**B. CIVIL MONETARY PENALTY**

1. Palmer shall pay a civil monetary penalty in the amount of $20,619,981.98 plus post-judgment interest.

2.      Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

3.      Palmer shall pay this civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order made payable to the Commodity Futures Trading Commission under cover of a letter that identifies Palmer and the name and docket number of this proceeding and sent to the following address:

> **Commodity Futures Trading Commission**
> **Division of Enforcement**
> **ATTN: Marie Batement – AMZ-300**
> **DOT/FAA/MMAC**
> **6500 S. Macarthur Blvd.**
> **Oklahoma City, OK, 73169**

Palmer shall simultaneously transmit a copy of the cover letter and the form of payment to the Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, DC 20581.

If payment is to be made by electronic funds transfer, Palmer shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions.  Additionally Palmer shall accompany payment of the penalty with a cover letter that identifies Palmer and the name and docket number of this proceeding.  The paying Defendants shall simultaneously transmit copies of the cover letter and the form of payment to: (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W.,

Washington, D.C. 20581; and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

### C. PRIORITY OF MONETARY SANCTIONS AND PARTIAL PAYMENTS

1. All payments by Palmer pursuant to this Order shall first be applied to satisfaction of their disgorgement obligation, consistent with the authority granted to the Monitor as stated above. After satisfaction of Palmer's disgorgement obligation, payments by Palmer pursuant to this Order shall be applied to satisfy Palmer's civil monetary penalty obligation.

### D. EQUITABLE RELIEF PROVISIONS

The equitable relief provisions of this Order shall be binding on Palmer and any person who is acting in the capacity of officer, agent, employee, servant or attorney of Palmer, and any person acting in concert or participation with Palmer who receives actual notice of this Order by personal service or otherwise.

### E. PROVISIONS RELATED TO MONETARY SANCTIONS

49. <u>Partial Payments</u>: Any acceptance by the Commission of partial payment of Defendant Palmer's civil monetary penalty obligation shall not be deemed a waiver of his requirement to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

50. <u>Satisfaction</u>: Upon full satisfaction of the defendant Palmer's CMP obligation, satisfaction of judgment will be entered as to defendant Palmer.

51. There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Order.

DATED: **October 4, 2010**

Honorable Edward J. Lodge
U. S. District Judge