## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>**DAREN L. PALMER** and **TRIGON GROUP, INC.**,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.:  CV-09-76-S-EJL<br><br>**CONSENT ORDER OF PERMANENT INJUNCTION, MONETARY JUDGMENT AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT TRIGON GROUP, INC** |

On February 26, 2009, the United States Commodity Futures Trading Commission ("Commission") filed the Complaint in this civil action against Defendants Daren L. Palmer ("Palmer") and Trigon Group, Inc. ("Trigon"), seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq*. On October 4, 2010, the Court entered an Order granting Summary Judgment and Entering Final Judgment of Permanent Injunction and Other Relief against Daren L. Palmer. Docket Entry ("Summary Judgment Order") ("D.E." #75).

## I.  CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Trigon without a trial on the merits or any further judicial proceedings, Defendant Trigon:

1.     Consents to the entry of this *Consent Order of Permanent Injunction and Other Equitable Relief Against Defendant Trigon Group, Inc.* ("Consent Order").

2.     Affirms that it has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.     Acknowledges service of the summons and Complaint;

4.     Admits the jurisdiction of this Court over it and the subject matter of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

5.     Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

6.     Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e);

7.     Waives:

   a.     any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2011), relating to or arising from this action;

   b.     any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§201-253, 110 Stat.

847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112,

204-205 (2007), relating to or arising from this action;

c.    any claim of Double Jeopardy based upon the institution of this action or the entry

in this action of any order imposing a civil monetary penalty or any other relief,

including this Consent Order;

d.    any and all rights of appeal from this action;

8.    Consents to the continued jurisdiction of this Court over it for the purpose of

implementing and enforcing the terms and conditions of this Consent Order and for any

other purpose relevant to this action, even if Defendant Trigon now or in the future

resides outside the jurisdiction of this Court;

9.    Agrees that it will not oppose enforcement of this Consent Order by alleging that it fails

to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any

objection based thereon;

10.    Agrees that neither it nor any of its agents or employees under its authority or control

shall take any action or make any public statement denying, directly or indirectly, any

allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent

Order, or creating or tending to create the impression that the Complaint and/or this

Consent Order is without a factual basis; provided, however, that nothing in this

provision shall affect its: (a) testimonial obligations, or (b) right to take legal positions in

other proceedings to which the Commission not a party.  Trigon shall undertake all steps

necessary to ensure that all of its agents and/or employees under its authority or control

understand and comply with this agreement; and

11.    Admits to all of the findings made in this Consent Order and all of the allegations in the

Complaint. Further, Trigon agrees and intends that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Trigon; (b) any proceeding pursuant to Section 8a of the Act, as amended, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2011); and/or (c) any proceeding to enforce the terms of this Consent Order.

12.  Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph **V** of Part **61** of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against it, whether inside or outside the United States, and

13.  Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Trigon in any other proceeding.

## II.    FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

   **A.    The Findings of Fact:**

**The Parties**

14.    Plaintiff Commodity Futures Trading Commission is an independent federal regulatory
       agency that is charged by Congress with administering and enforcing the Act, as
       amended, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R.
       §§ 1.1 *et seq.* (2011).

15.    Defendant Palmer is an individual residing in Idaho Falls, Idaho.  Palmer was the
       purported Vice President of Trigon and the trading principal for all trading in Defendant
       Trigon.  At no time has Palmer ever been registered with the National Futures
       Association ("NFA") or the Commission in any capacity.

16.    Defendant Trigon is a Nevada corporation operating out of Idaho Falls, Idaho.  Trigon,
       through Palmer, was held out to be an investment business that traded in both futures and
       options on futures for clients, generating high annual returns of approximately 20-25%
       per year.  Trigon has never been registered with the Commission as a CPO or in any other
       capacity.

### *The Trigon Ponzi Scheme*

17.   Palmer formed Trigon Group, Inc. in the state of Nevada with his father, Dean Palmer, in
      1997.  Palmer and his father organized this corporation for Palmer to facilitate his trading
      of stock index futures.

18.   By his own admission, Palmer traded both futures and options on futures through his
      corporation Trigon Group, Inc.

19.   Since at least January 2004, Trigon Group, Inc. held commodity trading accounts at
      Rosenthal Collins Group LLC ("Rosenthal Collins"), a Futures Commission Merchant
      ("FCM") registered with the Commission.  The accounts are introduced by Global
      Futures Exchange and Trading Co., an Introducing Broker ("IB") registered with the
      Commission.

20.   Starting in at least September 2000, Palmer began trading on behalf of investors who
      were either family members or close friends.  At least 57 individuals and entities invested
      in Trigon Group Inc. and other entities, at the direction of Palmer.

21.   From at least September 2000, Palmer represented to many investors that he would pool
      their funds and then trade their funds in commodity futures or options on commodity
      futures contracts through Trigon Group, Inc. and other entities.

22.   Since at least September 2000, Palmer fraudulently operated a commodity pool,
      misappropriated pool participant funds, and run a Ponzi scheme.

23.   Throughout the entire period when Palmer accepted money from investors for purposes
      of trading in the commodity pool, Palmer did not register in any capacity with the
      National Futures Association ("NFA") or the Commission.

24.    From September 2000 to the present, Palmer directly and indirectly solicited at least $40 million from at least 57 individuals or entities to invest in Trigon Group, Inc. and other entities. Just since January 2007, Palmer solicited at least $20 million from prospective and existing participants to invest in the commodity pool.

25.    Pool participants understood that their funds would be used for trading commodity futures and their guaranteed returns were based on the profitability of the Palmer's trading.

26.    In soliciting prospective and existing pool participants, Palmer represented that he would use pool participant funds to trade commodity futures on their behalf, among other things, S&P 500 index futures contracts. The S&P 500 index futures contract trades on the Chicago Mercantile Exchange, a designated commodity futures contract market regulated by the Commission.

27.    Defendant required some of the pool participants to invest in the commodity pool by providing tens or hundreds of thousands or even millions of dollars to Trigon Group, Inc., in exchange for promissory notes, some of which guaranteed an annual return of 7% or more. The promissory notes were signed by Palmer as President of Trigon Group, Inc.

28.    Although many of the promissory notes themselves did not offer a guaranteed return, Palmer verbally guaranteed some investors as much as a 20% per annum rate of return.

29.    Other pool participants who provided funds to Palmer were promised a monthly return of 7%.

30.    At a minimum, Palmer made the following false or misleading representations, and omitted the following material facts in his solicitations:

a.    Palmer failed to disclose the fact that he was using investor funds for his own

personal use, including paying himself as much as $35,000 per month and using

pool funds for the construction of a new home, paying personal credit card bills,

and buying snowmobiles;

b.    Palmer made the false representation that the pool was consistently

profitable;

c.    Palmer made the false representation that that the pool achieves positive

returns of as much as 7% monthly and 20% annually; and

d.    Palmer made the false representation that, over time, the pool has

increased in value to more than $65 million.

31.    Contrary to his claims of consistent successful trading, highly profitable returns, and ever

increasing funds under management through Trigon, Palmer was misappropriating the

vast majority of the funds invested by pool participants.

32.    Despite taking in at least $40 million in participant funds since September 2000,

including $20 million in participant funds since January 2007, Palmer only placed $4.5

million in the Trigon Group, Inc. accounts at Rosenthal Collins and one other FCM

between January 2004 and the present.

33.    Palmer did not disclose to his investors that neither he nor Trigon was registered with the

NFA or Commission in any capacity.

34.    Palmer did not take a set commission, but told some prospective participants that he

intended to keep for himself any profit over the 18% to 20% range.  Contrary to the claim

that Palmer would be compensated only after pool participants earned a certain rate of

return, at times during the course of Trigon's operation, Palmer compensated himself

with flat monthly fees ranging between $25,000 and $35,000 per month, regardless of the profitability of Trigon's futures trading. Thus, instead of trading pool participant funds as promised, by his own admission, Palmer used pool participant funds for personal expenses, including, among other things, construction of a new home, paying off his personal credit card bill, and purchasing snowmobiles.

35. Instead of trading pool participant funds as promised, Palmer - by his own admission - used pool participant funds to pay principal and purported profitable returns to existing pool participants in a manner typical of a Ponzi scheme. For example, from January 2008 to July 2008, Palmer used approximately $12 million in pool funds to pay existing pool participants. Similarly, from the inception of the pool, Palmer paid monthly interest or dividends to participants of as much as 7% per month. On January 27, 2009, Palmer admitted in sworn testimony to the Idaho Attorney General's Office that he used pool participant funds to pay other participants and for personal and business expenses.

36. From the inception of the pool, Palmer issued monthly account statements to some participants. Those false statements indicated that the participants' investments were growing as much as 7% per month and that the pool was increasing in value and assets, eventually totaling more than $65 million.

37. Existing pool participants decided to increase their participation on the basis of the allegedly consistently profitable returns.

**B.    Conclusions of Law**

*__Jurisdiction and Venue__*

38. This Court has jurisdiction over this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that

any person has engaged, is engaging, or is about to engage in any act or practice

constituting a violation of any provision of the Act or any rule, regulation, or order

promulgated thereunder, the Commission may bring an action in the proper district court

of the United States against such person to enjoin such act or practice, or to enforce

compliance with the Act, or any rule, regulation or order thereunder.

39.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7

U.S.C. § 13a-1(e), because the Trigon operated in this jurisdiction and the acts and

practices in violation of the Act occurred within this District.

### *Fraud and Misappropriation*

40.     As alleged above, and found in the Summary Judgment Order, during the relevant period,

Palmer knowingly, willfully or with reckless disregard for the truth, violated Sections

4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) (2006), with respect to acts

occurring before June 18, 2008, and in violation of Sections 4b(a)(1)(A)-(C) of the Act as

amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), with respect to acts

occurring on or after June 18, 2008, the effective date of the CRA by, among other

things, (1) omitting material information, including the fact that he was misappropriating

pool participant funds; (2) falsely representing that he was generating profits from his

trading on behalf of the pool and pool participants; (3) issuing or causing to be issued

false account statements and reports reflecting positive returns for the pool and increases

in the value of individual pool participants' interests; (4) misappropriating pool

participant funds by using such funds to pay principal and purported returns to other pool

participants; and (5) misappropriating pool participant funds to pay business expenses

and for personal use.

41.     Each misrepresentation or omission of material fact, issuance of a false statement or
        report, and misappropriation, including but not limited to those specifically alleged
        herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(i)-(iii) of the
        Act, 7 U.S.C.§§ 6b(a)(2)(i)-(iii) (2006), with respect to acts occurring before June 18,
        2008, and Sections4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7
        U.S.C. §§ 6b(a)(1)(A)(C), with respect to acts occurring on or after June 18, 2008.

42.     At all times relevant and in regard to all conduct alleged herein, Palmer was an agent of
        Trigon and acted within the scope of his employment.  As such, Trigon is liable for
        Palmer's conduct pursuant to Section 2(a)(1)(B of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

### *Fraud by Commodity Pool Operator*

43.     Commencing in at least September 2000 and continuing through the present, Palmer
        acted as a CPO for the pool by soliciting, accepting or receiving funds from others and
        engaging in a business that is of the nature of an investment trust, syndicate, or similar
        form of enterprise, for the purpose of trading in commodities for future delivery on or
        subject to the rules of a contract market.

44.     As alleged above, during the relevant period, Palmer employed a device, scheme or
        artifice to defraud prospective and existing pool participants, or engaged in a transaction,
        practice or course of business that operated as a fraud or deceit upon prospective and
        existing pool participants in violation of Sections 4o(1)(A) & (B) of the Act, 7 U.S.C. §§
        6o(1)(A) & (B) (2006), by (1) omitting material information, including the fact that he
        was misappropriating pool participant funds; (2) falsely representing that he was
        generating profits from his trading on behalf of the pool and pool participants; (3) issuing
        or causing to be issued false account statements and reports reflecting positive returns for

the pool and increases in the value of individual pool participants' interests; (4)

misappropriating pool participant funds by using such funds to pay principal and

purported returns to other pool participants; and (5) misappropriating pool participant

funds to pay business expenses and for personal use.

45.     Each misrepresentation or omission of material fact, issuance of a false statement or

report, and misappropriation, including but not limited to those specifically included

herein, is a separate and distinct violation of Sections 4o(1)(A) & (B) of the Act, 7

U.S.C.§§ 6o(1)(A) & (B) (2006).

46.     At all times relevant and in regard to all conduct alleged herein, Palmer was an agent of

Trigon and acted within the scope of his employment.  As such, Trigon is liable for

Palmer's conduct pursuant to Section 2(a)(1)(B of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

### *Failure to Register As a Commodity Pool Operator*

47.     Section 4m(1) of the Act, 7 U.S.C § 6m(1) (2006), provides that it is unlawful for any

CPO, unless registered under the Act, to make use of the mails or any means or

instrumentality of interstate commerce in connection with his business as a CPO.

48.     As alleged, during the relevant period, Palmer acted as a CPO within the meaning of

Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2006), and has used the mails or

instrumentalities of interstate commerce in or in connection with a commodity pool as a

CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C.

§ 6m(1) (2006).

49.     At all times relevant and in regard to all conduct alleged herein, Palmer was an agent of

Trigon and acted within the scope of his employment.  As such, Trigon is liable for

Palmer's conduct pursuant to Section 2(a)(1)(B of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

### III.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

50.   Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, Trigon is permanently restrained, enjoined and prohibited from directly or indirectly:

a.   In or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made on or subject to the rules of a designated contract market, for or on behalf of any other person;

   (A)   cheating or defrauding or attempting to cheat or defraud the other person;

   (B)   willfully making or causing to be made to the other person any false report or statement or willfully entering or causing to be entered for the other person any false record; or

   (C)   willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contact for or, in the case of paragraph (2) of Section 5a(g) of the Act, with the other person, in violation of 4b(a)(1)(A)-(C), 7 U.S.C. §§ 6b(a)(1)(A)-(C);

b.   In or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of Section 5a(g) of the Act, that is made, or to be

made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market–

    (A)    cheating or defrauding or attempting to cheat or defraud the other person;

    (B)    willfully making or causing to be made to the other person any false report or statement or willfully entering or causing to be entered for the other person any false record; or

    (C)    willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contact for or, in the case of paragraph (2) of Section 5a(g) of the Act, with the other person, in violation of 4b(a)(2)(i)-(iii), 7 U.S.C. §§ 6b(a)(2)(i)-(iii);

c.    Employing a device, scheme or artifice to defraud prospective and existing pool participants, or engage in a transaction, practice or course of business that operates as a fraud or deceit upon prospective and existing pool participants in violation of Sections 4o(1)(A) & (B) of the Act, 7 U.S.C. §§ 6o(1)(A) & (B) (2006);

d.    Using the mails or instrumentalities of interstate commerce in or in connection with a commodity pool as a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006);

e.    Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a);

f.      Entering into any transactions involving commodity futures, options on commodity

futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R.

§ 1.3(hh) (2011)) ("commodity options"), security futures products, and/or foreign

currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as

amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for its own

personal account or for any account in which it has a direct or indirect interest;

g.      Having any commodity futures, options on commodity futures, commodity

options, security futures products, and/or forex contracts traded on its behalf;

h.      Controlling or directing the trading for or on behalf of any other person or entity,

whether by power of attorney or otherwise, in any account involving commodity

futures, options on commodity futures, commodity options, security futures

products, and/or forex contracts;

i.      Soliciting, receiving or accepting any funds from any person for the purpose of

purchasing or selling any commodity futures, options on commodity futures,

commodity options, security futures products, and/or forex contracts;

j.      Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and/or

k.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2011)), agent or any other officer or employee of any person (as that

term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a) registered,

exempted from registration or required to be registered with the Commission

except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

## IV.   DISGORGEMENT

51.   Trigon shall, jointly and severally, pay disgorgement in the amount of $20,619,981.98

("Disgorgement Obligation"), plus post-judgment interest, within thirty days of the date

of the entry of this Consent Order.  Post-judgment interest shall accrue on the

Disgorgement Obligation beginning on the date of entry of this Consent Order and shall

be determined by using the Treasury Bill rate prevailing on the date of entry of this

Consent Order pursuant to 28 U.S.C. § 1961.

52.   To effect payment of the Disgorgement Obligation and the distribution of any

disgorgement payments to Trigon's customers and pool participants, the Court-appointed

Receiver shall collect Disgorgement payments from Trigon and make distributions in the

manner approved by the Court.  Because the Receiver is acting as an officer of this Court

in performing these services, the Receiver shall not be liable for any action or inaction of

the Receiver in the course of his duties, other than actions involving fraud.

53.   When making disgorgement payments to the Receiver, Trigon shall simultaneously

transmit copies of the cover letter and the form of payment to the Chief Financial Officer,

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW,

Washington, D.C. 20581.

54.   Trigon shall cooperate with the Receiver as appropriate to provide such information as

the Receiver deems necessary and appropriate to identify Defendant's customers and

pool participants to whom the Receiver, in its sole discretion, may determine to include in

any plan for distribution of any Disgorgement Obligation payments.  Trigon shall execute any documents necessary to release funds that it has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Disgorgement Obligation.

55.   The Receiver shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Trigon's customers and pool participants during the previous year until termination of the receivership estate.  The Receiver shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

56.   The amounts payable to each customer or pool participant shall not limit the ability of any customer or pool participant from proving that a greater amount is owed from Trigon or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer or pool participant that exist under state or common law.

57.   Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer or pool participant of Trigon who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Trigon to ensure continued compliance with any provision of this Consent Order and to hold Trigon in contempt for any violations of any provision of this Consent Order.

58.    To the extent that any funds accrue to the U.S. Treasury for satisfaction of Trigon's

Disgorgement Obligation, such funds shall be transferred to the Receiver for

disbursement in accordance with the procedures set forth above.

### *Provisions Related to Monetary Sanctions*

59.    Partial Satisfaction:  Any acceptance by the Commission or the Receiver of partial

payment of Trigon's Disgorgement Obligation shall not be deemed a waiver of its

obligation to make further payments pursuant to this Consent Order, or a waiver of the

Commission's right to seek to compel payment of any remaining balance.

### *Cooperation*

60.    Trigon shall cooperate fully and expeditiously with the Commission, including the

Commission's Division of Enforcement, and any other governmental agency in this

action, and in any investigation, civil litigation, or administrative matter related to the

subject matter of this action or any current or future Commission investigation related

thereto.

## V.    MISCELLANEOUS PROVISIONS

61.    Notice:  All notices required to be given by any provision in this Consent Order shall be

sent certified mail, return receipt requested, as follows:

To the Commission:              Paul Hayeck, Esq.
                                Commodity Futures Trading Commission
                                1155 21st Street, NW
                                Washington, D.C. 20581
                                (202) 418-5568
                                awilson@cftc.gov

Notice to Defendant Trigon:     Trigon, in care of Wayne Klein (Receiver)

                                KLEIN & ASSOCIATES, PLLC
                                10 Exchange Place, Suite 502
                                Salt Lake City, UT 84111

All such notices to the Commission shall reference the name and docket number of this action.

62.     Change of Address/Phone:  Until such time as Trigon satisfies in full its Restitution

        Obligation and Disgorgement Obligation as set forth in this Consent Order, Trigon shall

        provide written notice to the Commission by certified mail of any change to his telephone

        number and mailing address within ten (10) calendar days of the change.

63.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms

        and conditions of the settlement among the parties hereto to date.  Nothing shall serve to

        amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to

        writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

64.     Invalidation:  If any provision of this Consent Order or if the application of any provision

        or circumstance is held invalid, then the remainder of this Consent Order and the

        application of the provision to any other person or circumstance shall not be affected by

        the holding.

65.     Waiver:  The failure of any party to this Consent Order or of any customer or pool

        participant at any time to require performance of any provision of this Consent Order

        shall in no manner affect the right of the party or customer or pool participant at a later

        time to enforce the same or any other provision of this Consent Order.  No waiver in one

        or more instances of the breach of any provision contained in this Consent Order shall be

        deemed to be or construed as a further or continuing waiver of such breach or waiver of

        the breach of any other provision of this Consent Order.

66.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to

        ensure compliance with this Consent Order and for all other purposes related to this

action, including any motion by Trigon to modify or for relief from the terms of this Consent Order.

67. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Trigon, upon any person under its authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Trigon.

68. Authority:  Wayne Klein ("Klein") hereby warrants that he is the court-appointed Receiver, and that this Consent Order has been duly authorized by Trigon and Klein has been duly empowered to sign and submit this Consent Order on behalf of Trigon.

69. Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

70. Trigon understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings it may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order.*

**IT IS SO ORDERED** on this   30  day of _____ November _____ , 2012.

UNITED STATES DISTRICT JUDGE

*Order of Permanent Injunction and Ancillary Equitable Relief consented to and approved for entry by:*

Trigon Group, Inc.

Dated: September 12 , 2012

Alison B. Wilson
Attorney for Plaintiff
U.S. Commodity Futures Trading
Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC 20581

Dated: November 29 , 2012